## WEHRMAN *v.* CONKLIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

No. 45. Argued October 31, 1894. — Decided December 10, 1894.

The general principles of equity jurisprudence, as administered in this country and in England, permit a bill to quiet title to be filed only by a party in possession, against a defendant who has been ineffectually seeking to establish a legal title by.repeated actions of ejectment; and as a prerequisite to such bill it was necessary that the title of the plaintiff should have been established by at least one successful trial at law.

The statutes of Iowa, (Code, § 3273,) having enlarged the jurisdiction of the courts of equity of that State by providing that " an action to determine and quiet title to real property may pe brought by any one having or

claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto, though not 'in possession," such enlarged jurisdiction, if sought to be enforced in a Federal court, sitting within the State, can only be exercised subject to the constitutional provision entitling parties to a trial by jury, and to the provision in Rev. Stat., § 723, prohibiting suits in equity where a plain, complete and adequate remedy may be had at law.

In December, 1859, the land, the subject of controversy in this suit, was patented to A. W. In the same month it was conveyed by A. W. and his wife to F. W. In January, 1861, G. caused it to be attached as the property of A. W. in an action founded upon a judgment obtained against him in a court in Wisconsin, which case proceeded to judgment against A. W. in September, 1861. Prior to levy of execution in that case, G., in a suit in equity against A. W. and F. W., obtained a decree declaring the deed to be void and ordering the land to be sold in satisfaction of the judgment at law. Levy was made, the land was sold, and the sheriff made a deed conveying the property to G., who entered into possession, paid taxes, and in 1881, 1882, and 1884 conveyed the lands to C., who entered into possession and made valuable improvements upon them. For thirty years the taxes have been paid by C. and his privies in estate. F. W. having set up a claim to the property by reason of alleged irregularities in the proceedings by which G. acquired title, and having commenced an action in ejectment to enforce that claim, C. filed this bill in equity setting up the foregoing facts, averring that the deed by A. W. to F. W. was a cloud upon his title, and praying for a stay of the action of ejectment, for an injunction against further proceedings at law, and for a decree that C. held the lands free and clear from all claims of F. W. A demurrer was interposed setting up among other things that the writ of attachment was not attested by the seal of the court; that no service of summons or notice was had upon A. W. in the State of Iowa; and other matters named in the opinion. The demurrer being overruled, answer was made, and a final decree was made in plaintiff's favor. *Held,*

(1) That the plaintiff had no adequate remedy at law, and the Circuit Court consequently had jurisdiction in equity;

(2) That if no action in ejectment had been begun at law, the long continued adverse possession of the plaintiff, and the equitable title set up in the bill would have been a sufficient basis for the maintenance of the suit;

(3) That, where title to real property is concerned, equity has a concurrent jurisdiction, which affords more complete relief than can be obtained in a court of law;

(4) That the bill was in the nature of a judgment creditor's bill, setting up defects of title, against which they had a right to ask relief from a court of equity;

(5) That it was immaterial whether the defects in the title of G. were well founded or not;

(6) That the absence of the seal did not invalidate the writ.

THIS was a bill in equity brought by the appellees, Conklin and wife, to enjoin the plaintiff, Wehrman, from prosecuting an action of ejectment in the court below, against the appellees, to recover possession of the lands in controversy.

. The bill, which was filed by T. B. Conklin and E. F. Conklin, whose Christian names are not given, but who appear from subsequent allegations to be husband and wife, set forth that they were the "absolute owners" of the property, which had been purchased of the United States on June 9, 1857, by one Adolph Wehrman, who received a patent therefor on December 1, 1859. Afterwards, and on December 17, 1859, Adolph Wehrman and wife conveyed the land in controversy with other lands — about 2060 acres in all — by deed of warranty, to the defendant Frederick Wehrman for an expressed consideration of $3000. This deed was recorded in the proper office for the county of Woodbury, to which the county of O'Brien, wherein the lands were situated, was then attached for judicial purposes.

The bill further alleged that on January 14, 1861, a copartnership known as Greeley, Gale & Co. began an action at law, aided by an attachment in the District Court of O'Brien County, upon a judgment rendered by the Circuit Court of Pierce County in the State of Wisconsin, against Adolph Wehrman, which judgment was based upon notes given prior to the date of the conveyance of said lands to the defendant by Adolph Wehrman. Such judgment was rendered after personal service upon Adolph Wehrman in the State of Wisconsin. A writ of attachment was issued by the clerk of the District Court of O'Brien County, and levied upon the lands in question, and notice personally served upon the defendant in the State of Wisconsin, although no service of summons or notice appears to have been had in the State of Iowa. At the time the writ of attachment was issued there was no time fixed by law for holding the term of the District Court in O'Brien County, though subsequently the judge appointed a term to be held on the 3d day of June, 1861, to which day the writ of attachment was actually made returnable. The venue of the cause having been changed to the county of

Woodbury, on September 17, 1861, a judgment was rendered by the District Court of that county against the defendant Wehrman for $1809.40 damages and costs, and the lands "described in the writ of attachment" were ordered to be sold in satisfaction thereof. A certified copy of this judgment was filed in the District Court of O'Brien County.

Afterwards, and prior to the June term of 1862, Greeley, Gale & Co. commenced a suit in equity in the District Court of O'Brien County, against Adolph Wehrman and wife and Frederick Wehrman, for the purpose of setting aside and cancelling the deed from Adolph Wehrman and wife to Frederick Wehrman, as fraudulent and void against the creditors of the former, and subjecting the lands described in this deed to the payment and satisfaction of their judgment against Wehrman. The plaintiffs averred that they were unable to set out the proceedings in such suit for the reason that they had become lost and destroyed, but that there was personal service upon the defendants in the State of Wisconsin; that, subsequently, and at the June term of 1862, a decree was rendered by default declaring the deed to be fraudulent and void, and ordering the lands to be sold in satisfaction of the judgment rendered by the District Court of Woodbury County, and the proceeds to be applied to the payment of such judgment; that an execution was subsequently, and on June 16, 1862, issued from the District Court of Woodbury County, directed to the sheriff of O'Brien County, by virtue of which the sheriff levied upon the lands described in the writ of attachment, and sold the same on July 31, 1862, to Carlos S. Greeley, one of the members of the firm of Greeley, Gale & Co., who thereupon acknowledged satisfaction of the judgment; and that on December 31, 1864, the land not being redeemed, the sheriff executed to Greeley a sheriff's deed, which was filed, whereby Carlos S. Greeley became the absolute owner of the land.

That he subsequently acquired a tax title to such lands for the taxes of 1858 and 1859, and that said lands by conveyances from Greeley in 1881, 1882, and 1884, became the property of Conklin, who took immediate possession and has since been in

full, open, notorious, and adverse possession of the same. That the plaintiffs and their grantors paid all the taxes upon such lands for thirty years, and have made valuable improvements by putting some six hundred acres under cultivation, by the erection of substantial buildings and fences, digging wells and otherwise improving the premises. That such improvements have been made at an expense of $1000 and in full reliance upon their title being good and valid. That in the meantime defendant has never asserted any right or title to the premises, or notified plaintiff of his interest in the same. That Wehrman never asserted any claim to the premises, until the land became valuable by reason of the plaintiffs' expenditures; had never paid any taxes upon the property, and, though having actual knowledge of the proceedings taken by Greeley, Gale & Co. to subject the land to the payment of their judgment, for more than twenty-seven years took no steps to have the records corrected, or asserted any claim, or notified purchasers of such claim, until his action at law was commenced.

The bill further averred the conveyance by Adolph Wehrman to be a cloud upon their title, and, being in actual possession and occupancy of the land, they prayed that the action in ejectment be stayed until the determination as to their rights to the land, and that Wehrman be enjoined from further proceedings at law.

Defendant interposed a demurrer to the bill for the want of jurisdiction and of equity, which was overruled; and he thereupon answered setting up certain defects in the proceedings under which Greeley, Gale & Co. sold the land upon execution, and by virtue of which proceedings plaintiffs claimed to have acquired a title, viz.: (1) that the writ of attachment was not attested by the seal of the court in which the action was brought; (2) that no service of summons or notice was had upon the defendant Adolph Wehrman in the State of Iowa; (3) that such notice as was given described the action as having been brought upon a judgment rendered May 12, 1860, when in fact the judgment was rendered September 12, 1860, and judgment was taken upon the attachment proceedings upon a judgment so rendered September 12, 1860;

(4) that the writ of attachment was made returnable at a term commencing on June 3, 1861, when in fact the commencement of that term was not fixed until more than a month after the writ was issued; (5) that a change of venue was ordered from O'Brien County to Woodbury County, and the papers sent there without having been in any manner certified or verified by the seal of the court in which the suit was brought; (6) that the judgment was *in personam*, and ordered the property "described in the writ of attachment" to be sold to satisfy the same, when in fact no property was described in the writ, but only in the return of the officer endorsed thereon; (7) that in the subsequent equity suit to subject the lands to the payment of this judgment, there was no personal service or notice of process upon the appellant, Frederick Wehrman, in the State of Wisconsin; (8) that the tax deed was defective, inasmuch as the taxes on the lands for 1858 and 1859 were payable by law to the treasurer of Woodbury County, whereas the tax deed shows that the treasurer of O'Brien County attempted to sell the lands for taxes and give a tax deed.

The case was argued upon pleadings and proofs, and the court made a final decree in which the adverse claims of the defendant Wehrman were adjudged to be invalid and groundless, the complainants decreed to be the true and lawful owners of the land, and their title to be quieted against the claims of the defendant, who was perpetually enjoined from setting up the same; and further, that defendant be enjoined from further proceedings at law.

From this decree defendant appealed to this court. The opinion of the court upon demurrer is found in 38 Fed. Rep. 874, and upon final hearing in 43 Fed. Rep. 12.

*Mr. Charles A. Clark* for appellant, to the question of equitable jurisdiction, said:

Wehrman brought his action at law, to recover possession of the lands in controversy. He claims by a strictly legal title. Conklin claims by a strictly legal title. Appellant was entitled to a trial by jury to determine the validity of his title

and that of Conklin. Equity has no jurisdiction to deprive him of this right. *Lewis* v. *Cocks*, 23 Wall. 466; *Fussell* v. *Gregg*, 113 U. S. 550; *Killian* v. *Ebbinghaus*, 110 U. S. 568; *Hipp* v. *Babin*, 19 How. 271; *Grand Chute* v. *Winegar*, 15 Wall. 373; *Whitehead* v. *Shattuck*, 138 U. S. 146.

It will be observed that these decisions proceed upon the ground that *both* parties have a constitutional right to trial by jury. The party out of possession, who brings his action at law to eject his adversary and try the question of legal title to the real estate, is as much entitled to the right of trial by jury as the party in possession, who also claims under a legal title.

Both parties to this controversy claim that they hold the legal title to the land. If Conklin holds such legal title by virtue of the sheriff's deed or his tax deed, under which he claims, he has an adequate and complete remedy at law, by asserting and maintaining such legal title in the action at law brought against him by Wehrman.

If, however, the pretended equitable estoppel which he sets up is requisite to the establishment of his title or right to possession of the land, he can prove and establish that equitable estoppel as a defence in the action at law, as well as he can assert it as a foundation for his suit in equity. Such is the established doctrine of this court. *Dickerson* v. *Colgrove*, 100 U. S. 578; *Kirk* v. *Hamilton*, 102 U. S. 68; *Bacon* v. *Northwestern Ins. Co.*, 131 U. S. 258.

So far as any question of equitable estoppel is concerned, therefore, Conklin had an adequate and complete remedy at law, by asserting and proving such estoppel as a defence to the action in ejectment.

It is also settled law that the equitable jurisdiction of Federal courts can be neither enlarged nor diminished by state legislation. Such was the decision of this court in a case cited *supra*, where the statutes of Iowa authorized a suit in equity on a legal title against a party in the possession of real estate. *Whitehead* v. *Shattuck*, 138 U. S. 146. See also *Mississippi Mills* v. *Cohn*, 150 U. S. 202; *Payne* v. *Hook*, 7 Wall. 425; *McConahy* v. *Wright*, 121 U. S. 205; *Scott* v. *Neely*, 140 U. S.

106; *Gates* v. *Allen,* 149 U. S. 451; *Swan Land & Cattle Co.* v. *Frank,* 148 U. S. 612.

*Mr. Ernest C. Herrick* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This is a bill in equity not only to stay an action in eject-ment at law, but to remove a cloud cast upon Conklin's title to the lands in question, created by a deed from Adolph Wehr-man to Frederick Wehrman, appellant and defendant in the bill, and to quiet their own title thereto.

1. Defendant's principal contention is that equity has no jurisdiction of the case, for the reason that the contest con-cerns the legal title only, and that plaintiffs have a plain, adequate, and complete remedy at law. It is undisputed that Carlos S. Greeley, a member of the firm of Greeley, Gale & Co., bought the lands in question at a sheriff's sale which took place on July 31, 1862, and that for about twenty years there-after, when the lands were sold to Conklin, he paid the taxes upon the land. That the Conklins upon their purchase of the several parcels took immediate possession, and that they have since been in full, open, and adverse possession and occupancy of the same; have made large and valuable improvements thereon by putting some six hundred acres under cultivation, and by erecting substantial buildings and fences, digging wells and otherwise improving the premises, making the same more valuable, and have expended a thousand dollars in such im-provements in good faith, and full reliance upon such title being good and valid. That the defendant during such time, and for more than twenty-seven years, had never done any act or taken any step to have the records corrected or to assert any claim on his part to such lands, or to notify purchasers of his interest in the same until he began his action of ejectment.

The general principles of equity jurisprudence, as adminis-tered both in this country and in England, permit a bill to quiet title to be filed only by a party in possession against a

defendant, who has been ineffectually seeking to establish a legal title by repeated actions of ejectment, and as a prerequisite to such bill it was necessary that the title of the plaintiff should have been established by at least one successful trial at law. Pomeroy's Equity Jurisprudence, sections 253, 1394, and 1396. At common law a party might by successive fictitious demises bring as many actions of ejectment as he chose, and a bill to quiet title was only permitted for the purpose of preventing the party in possession being annoyed by repeated and vexatious actions. The jurisdiction was in fact only another exercise of the familiar power of a court of equity to prevent a multiplicity of suits by bills of peace. A statement of the underlying principles of such bills is found in the opinion of this court in *Holland* v. *Challen,* 110 U. S. 15, 19, in which it is said: " To entitle the plaintiff to relief in such cases the concurrence of three particulars was essential: He must have been in possession of the property; he must have been disturbed in its possession by repeated actions at law; and he must have established his right by successive judgments in his favor. Upon these facts appearing, the court would interpose and grant a perpetual injunction to quiet the possession of the plaintiff against any further litigation from the same source. It was only in this way that adequate relief could be afforded against vexatious litigation and the irreparable mischief which it entailed."

This method of adjusting titles by bill in equity proved so convenient, that in many of the States statutes have been passed extending the jurisdiction of a court of equity to all cases where a party in possession, and sometimes out of possession, seeks to clear up his title and remove any cloud caused by an outstanding deed or lien which he claims to be invalid, and the existence of which is a threat against his peaceable occupation of the land, and an obstacle to its sale. The inability of a court of law to afford relief was a strong argument in favor of extending the jurisdiction of a court of equity to this class of cases.

The statute of Iowa, upon which this bill is based, is an example of this legislation, and provides (sec. 3273) that " an

action to determine and quiet title to real property may be brought by any one having, or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto, though not in possession."

It will be observed that this statute enlarges the jurisdiction of courts of equity in the following particulars:

1. It does not require that plaintiff should have been annoyed or threatened by repeated actions of ejectment.

2. It dispenses with the necessity of his title having been previously established at law.

3. The bill may be filed by a party having an equitable as well as a legal title. *Grissom* v. *Moore*, 106 Indiana, 296; *Stanley* v. *Holliday*, 30 N. E. Rep. 634; *Echols* v. *Hubbard*, 7 South. Rep. 817.

4. In some States it is not even necessary that plaintiff should be in possession of the land at the time of filing the bill.

These statutes have generally been held to be within the constitutional power of the legislature; but the question still remains, to what extent will they be enforced in the Federal courts, and how far are they subservient to the constitutional provision entitling parties to a trial by jury, and to the express provision of Revised Statutes, section 723, inhibiting suits in equity in any case where a plain, complete, and adequate remedy may be had at law. These provisions are obligatory at all times and under all circumstances, and are applicable to every form of action, the laws of the several States to the contrary notwithstanding. Section 723 has never been regarded, however, as anything more than declaratory of the existing law, *Boyce* v. *Grundy*, 3 Pet. 210, and as was said in *N. Y. Guaranty Co.* v. *Memphis Water Co.*, 107 U. S. 205, 210, "was intended to emphasize the rule, and to impress it upon the attention of the courts." It was not intended to restrict the ancient jurisdiction of courts of equity, or to prohibit their exercise of a concurrent jurisdiction with courts of law in cases where such concurrent jurisdiction had been previously upheld.

The question of enforcing these state statutes was first con-

sidered in *Clark* v. *Smith*, 13 Pet. 195, in which a bill was filed by a party in possession to compel the defendant to release a pretended title to certain lands claimed by him under patents from the State of Kentucky. The conveyance asked by the bill was sought to be in conformity with the provisions of an act of the assembly of Kentucky giving jurisdiction to courts of equity in such cases. It was held that the legislature "having created a right, and having at the same time prescribed the remedy to enforce it, if the remedy prescribed is consistent with the ordinary modes of procedure on the chancery side of the Federal courts, no reason exists why it should not be pursued in the same form as in the state courts. On the contrary, propriety and convenience suggest that the practice should not materially differ, where titles to land are the subjects of investigation." This case was cited and approved in *Parker* v. *Overman*, 18 How. 137, where a proceeding under a statute of Arkansas, prescribing a special remedy for the confirmation of sales of land by a sheriff, was held to be enforceable in the Federal courts. In *Holland* v. *Challen*, 110 U. S. 15, the principle of this case was extended to one of wild land, of which neither plaintiff nor defendant was in possession. Plaintiff claimed under a tax title, and the property was described in the bill as unoccupied, wild, and uncultivated land. The question was elaborately examined, and the jurisdiction sustained upon the ground that an enlargement of equitable rights by state statutes may be administered in the Federal courts as well as in the courts of the State, citing *Clark* v. *Smith*, and the case of *Broderick's Will*, 21 Wall. 503, 520. The case was treated as one where the plaintiff had no remedy at law against the defendant, who claimed an adverse interest in the premises. In delivering the opinion, however, it was intimated, page 25, that if a suit were brought in the Federal court under the Nebraska statute, against a party in possession, "there would be force in the objection that a legal controversy was withdrawn from a court of law; but that is not this case, nor is it of such case we are speaking." Another step in the same direction was taken in *Reynolds* v. *Crawfordsville Bank*, 112

U. S. 405, in which a bill was sustained upon an equitable title, although it would appear from the report of the case that such title was not fortified by an actual possession; and in *Chapman* v. *Brewer*, 114 U. S. 158, a similar suit was upheld under a statute of Michigan permitting bills to quiet title to be filed by any person in possession.

Subsequent cases, however, denied the power of the Federal courts to afford relief under such statutes where the complainant was not in possession of the land, and in *Whitehead* v. *Shattuck*, 138 U. S. 146, particularly, it was held that, where the proceeding is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. "The right which in this case the plaintiff wishes to assert is his title to certain real property; and the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury." The case of *Holland* v. *Challen* was distinguished as one where neither party was in possession of the property, and it was further said that in the case of *Reynolds* v. *Crawfordsville Bank* the question did not arise as to whether the plaintiff had a remedy at law, but whether a suit to remove the cloud mentioned would lie in a Federal court. The case of *United States* v. *Wilson*, 118 U. S. 86, was really to the same effect, though not cited in *Whitehead* v. *Shattuck*. See also *Frost* v. *Spitley*, 121 U. S. 552. But nothing was said in either of these to disturb the harmony of the previous cases.

The real question, then, to be determined in this case is, whether the plaintiffs have an adequate remedy at law. If they have, then section 723 is controlling, and, notwithstanding a local practice under the code, where no discrimination is made between actions at law and in equity, may authorize such suit, the Federal courts will not entertain the bill, but will remit the parties to their remedy at law. The bill under consideration alleges the plaintiffs to be the "absolute owners" of the premises, and then sets forth certain proceedings by which it is alleged they became such; but it is claimed and substantially admitted in the bill that, by reason of certain

irregularities in these proceedings, it is doubtful whether the legal title ever became vested in the plaintiffs. The bill then sets up the long possession of the plaintiffs and their grantors, large outlays by them in improvements upon the land, the practical adandonment of the same by the defendant, all of which, it is claimed, constitute an estoppel *in pais*. Plaintiffs also rely upon the laches of Wehrman in bringing the action in ejectment, and allege a failure to bring his suit within the period prescribed by the statute of limitations. It is entirely clear that, if no action in ejectment had been begun at law, the long-continued adverse possession of the plaintiffs, and the equitable title set up in the bill, would have been a sufficient basis for the maintenance of the suit; and it is not easy to see why the commencement of such action should place them in a worse position than they were in before or oust them of their remedy in equity.

If the only contest in this case were as to whether the legal title to these lands was in the plaintiffs or defendant, it may be that a court of law would be the only proper forum for the settlement of this dispute; but the plaintiffs further claim that, by reason of certain defects in the proceedings by which they acquired title, such title is doubtful at law; but that the long delay of the plaintiff at law in the assertion of his rights, establishes a defence of laches, and his failure to set up his title, and his long acquiescence in the Conklins' possession of the lands, estop him from proceeding either at law or in equity to oust them.

It is scarcely necessary to say that complainants cannot avail themselves *as a matter of law* of the laches of the plaintiff in the ejectment suit. Though a good defence in equity, laches is no defence at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed. If the statute limits him to twenty years, and he brings his action after the lapse of nineteen years and eleven months, he is as much entitled as matter of law to maintain it, as though he had brought it the day after his cause of action accrued, though such delay may properly be considered by the jury in connec-

tion with other facts tending to show an estoppel. As was said by Chancellor Green in *Horner* v. *Jobs*, 2 Beasley, (13 N. J. Eq.,) 19, 23 : "Nor can the staleness of the claim, or the lapse of time, or the statute of limitations, avail the complainant. The *defendant* is asking no relief at the hands of this court. He was seeking to enforce his legal rights in a court of law. The complainant is here asking the aid of this court. It is the claim of the complainant, not the title of the defendant, to which the equitable defence of a stale claim is applicable. No lapse of time can avail the complainant, unless it be a part of the defendant's title under the statute of limitations. This defence will avail the defendant at law as well as in equity, and constitutes no ground for enjoining proceedings at law." Had Wehrman seen fit to resort to a court of equity in assertion of his rights, undoubtedly the defendants to such suit might have interposed the defence of laches, but it is quite a different question whether it could be made the basis of a bill. It may, however, be considered as one of the facts of the case tending to show an estoppel.

Undoubtedly the facts set forth in this bill are such as tend to show an equitable estoppel on the part of Wehrman, and this court did hold in a very carefully considered opinion in *Dickerson* v. *Colgrove*, 100 U. S. 578, that an estoppel *in pais* was an available defence to an action at law. This case was cited and applied in *Baker* v. *Humphrey*, 101 U. S. 494; in *Kirk* v. *Hamilton*, 102 U. S. 68; and in *Drexel* v. *Berney*, 122 U. S. 241; although, in the last case, the bill was supported upon the ground that a resort to a court of equity in the particular case was necessary in order to make the estoppel available. As was said by Mr. Justice Matthews : "All that can properly be said is, that in order to justify a resort to a court of equity, it is necessary to show some ground of equity other than the estoppel itself, whereby the party entitled to the benefit of it is prevented from making it available in a court of law." To the same effect is *Gable* v. *Wetherholt*, 116 Illinois, 313.

But even if it be assumed that the facts relied upon as constituting an equitable estoppel in this case might be laid before

a jury in a common law action, and if established operate as a defence, yet it does not necessarily follow that a bill in equity will not also lie to cancel the outstanding deed from Adolph to Frederick Wehrman as fraudulent, or at least as unavailable under the peculiar circumstances of the case. There is a class of cases which hold that where there is actual fraud no remedy at law is complete and adequate, except that which removes the fraudulent title. As early as 1750, it was held by Lord Chancellor Hardwicke, in *Bennet* v. *Musgrove*, 2 Ves. Sen. 51, that a bill would lie by an execution creditor to set aside a fraudulent conveyance, whether he could recover at law or not. Objection having been made to the bill upon the ground that the remedy at law was complete, the Lord Chancellor observed: "But be it as it may, whether he could recover or not, he is entitled to come into this court; the distinction in this court being, where a subsequent purchaser for valuable consideration would recover the estate, and set aside or get the better of a precedent voluntary conveyance, if that conveyance was fairly made without actual fraud, the court will say, take your remedy at law; but wherever the conveyance is attended with actual fraud, though they might go to law by ejectment, and recover the possession, they may come into this court to set aside that conveyance; which is a distinction between actual and presumed fraud from its being merely a conveyance." This is still the law in England. *Blenkinsopp* v. *Blenkinsopp,* 1 De G., M. & G. 495. The leading case in the Federal courts upon this point is *Bean* v. *Smith,* 2 Mason, 252, in which Mr. Justice Story held that, notwithstanding the restrictive clause of the judiciary act, Rev. Stat. § 723, a judgment creditor might file a bill in equity against his debtor to set aside a fraudulent conveyance, since there is not, in the proper sense of the term, a plain, adequate, and complete remedy at law.

While, in view of our decisions in *Insurance Company* v. *Bailey,* 13 Wall. 616, and *Buzard* v. *Houston,* 119 U. S. 347, there may be a doubt whether this remedy is available in personal actions, the law is well settled that where title to real property is concerned, equity has a concurrent jurisdiction,

because it may not only enjoin an action at law, but may order a cancellation of the fraudulent conveyance, and prohibit the bringing of further suits at law upon the fraudulent title, and thus afford a more complete relief than is possible in a court of law. *Dodge* v. *Griswold*, 8 N. H. 425; *Tappan* v. *Evans*, 11 N. H. 311; *Sheafe* v. *Sheafe*, 40 N. H. 516; *Miller* v. *Scammon*, 52 N. H. 609; *Traip* v. *Gould*, 15 Maine, (3 Shepley,) 82; *Cox* v. *Dunham*, 4 Halst. Ch., (8 N. J. Eq.,) 594; *Sheppard* v. *Iverson*, 12 Alabama, 97; *Planters' &c. Bank* v. *Walker*, 7 Alabama, 926; *Murphy* v. *Blair*, 12 Indiana, 184; *Mohawk Bank* v. *Atwater*, 2 Paige, 54; 2 Pom. Eq. Juris. § 1415.

When analyzed, the bill under consideration is really in the nature of a judgment creditor's bill filed by the plaintiffs, who claim that they have acquired, by successive assignments from the original creditors, a lien upon certain lands which the debtor has conveyed in fraud of the original creditors. There are also, it is true, the additional reasons that the plaintiffs have long been in possession of the land; that the records of the case, through which the original purchaser at the execution sale claimed to have acquired the legal title to the lands, have been lost, and that their title, though perfectly good in equity, may be technically insufficient at law. In such case they have a right to call upon a court of equity for relief against such defects. *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417, 449; *Stone* v. *Anderson*, 6 Foster, (26 N. H.,) 506; *Conroy* v. *Woods*, 13 California, 626; *Robert* v. *Hodges*, 16 N. J. Eq. (1 C. E. Green) 299.

2. Upon the merits, the case presents no difficulty whatever. We do not find it necessary to examine in detail the several defects, which are claimed to invalidate the proceedings under which Greeley finally became the purchaser of the land in question, since we are all of the opinion that the plaintiffs are entitled to a decree, whether these proceedings vested a legal title in Greeley or not. Greeley, Gale & Co. had a legal claim against Adolph Wehrman upon a judgment lawfully obtained against him in Wisconsin. Upon the basis of this judgment they brought suit against him in Iowa, sued out a writ of attachment, and levied it upon the lands in question.

Admitting that the writ was not impressed with such a seal as the law required, it was not, under the circumstances, void upon that ground. O'Brien County was not organized as an independent county until February 6, 1860. The writ was issued January 14, 1861. The county offices being evidently not yet in a complete working condition, the clerk affixed an ordinary private seal or scroll to the writ, with a statement that no seal had yet been procured. Granting that a failure to use an engraved seal actually provided would avoid the writ, certainly the clerk was entitled to a reasonable time to procure such seal. In the meantime, however, the rights of suitors and of the public ought not to be prejudiced by the lack of one. The whole civil and criminal business of the county ought not to come to a stop simply through the failure of its officers to provide it with a seal. As was justly observed by the learned judge of the Circuit Court: " The only purpose of the seal is to authenticate the issuance of the writ. May not such authentication be furnished in other ways, if for any reason the court is without an engraved seal for a time ? Suppose that to-day the engraved seal of O'Brien County should be destroyed or stolen, must all the judicial proceedings therein be brought to a standstill, awaiting the procurement of another engraved seal ? Would not this be subverting substance to mere form ? Would it not be permissible for the court to continue the issuance of writs of attachment and execution, having attached thereto a scroll as a seal, the writ on its face showing the reason thereof ? "

While the clerk does not seem to have used any great diligence in procuring a seal, his laches in that particular cannot be made the subject of inquiry here. The fact that no engraved seal had been procured is a sufficient excuse for the purpose of the case. The sheriff, by virtue of this writ, made a levy upon the lands in question, endorsed such levy upon the writ, and caused personal notice to be served upon the defendant Wehrman in the State of Wisconsin, January 25, 1861.

It is also true that the petition for the attachment described the judgment sued upon as having been rendered on May 12,

1860, when in fact it was not rendered until September 12; that the writ was made returnable upon a day which had not been fixed as the first day of the next term of the court, though it was subsequently fixed upon that day; and that, in changing the venue of the action to Woodbury County, the transcript of the record was sent to such county without being certified by the seal of the court in which the suit was brought. While these might have been good defences to the action, if seasonably interposed, they do not render the writ and all the proceedings thereunder void. Indeed, it is at least doubtful whether, if no notice at all had been served upon Wehrman, the lien of the attachment would have thereby been lost. The object of the notice is to apprise the defendant of the commencement of the suit, and to call him in to defend and prevent the plaintiff from obtaining judgment if he can. The object of the writ, which is issued *ex parte*, is to enable the plaintiff to obtain a lien upon the land, which may be subsequently enforced by a sale upon execution, if judgment be obtained. If notice were actually served upon the defendant in Wisconsin, as claimed, it is difficult to see why the judgment subsequently entered up was not valid as against the land attached, though of course not against the defendant *in personam*.

Whether the subsequent proceeding by bill to set aside the deed from Adolph to Frederick Wehrman was invalid or not, it is unnecessary to inquire. The attachment and subsequent long continued possession thereunder vested an interest in the present plaintiffs which was amply sufficient as a basis for this bill. If, as is claimed, the decree in the chancery court was void because no personal service was obtained upon defendant Wehrman within the State of Iowa, there is greater reason why jurisdiction of the present bill should not be declined, since the object of this bill is practically the same as the other, viz., to obtain the benefit of the attachment proceedings. If personal service were obtained in the State of Wisconsin, we see no objection to the decree as rendered, since the Code of Iowa, sections 2831 and 2835, permit personal service or service by publication upon defendants out of the jurisdiction "in an action for the sale of real property under

a mortgage lien or other incumbrance or charge;" and such statutes have been upheld by this court. *Arndt* v. *Griggs*, 134 U. S. 316. If no proper service were obtained, then we are able to do in this suit what was ineffectually attempted there.

The salient and decisive facts of this case are that Greeley, Gale & Co. obtained, or at least attempted to obtain, a lien upon this land by virtue of their attachment; that personal service of such proceeding was made upon Adolph Wehrman in the State of Wisconsin, January 25, 1861; that they went through the form of obtaining a judgment against these lands, and selling them upon execution; that Greeley purchased these lands upon such sale, paid taxes thereon, acquired tax titles thereto, and subsequently sold the same, and that plaintiffs in this suit became the purchasers; that they immediately took possession of the same; and that they and their grantors have been in open, notorious, and undisturbed possession for twenty-seven years; have built a house and other buildings, and made other improvements thereon; that Frederick Wehrman, the defendant herein, took title to these lands December 17, 1859, the very day that suit was originally begun against Adolph; that the deed was made to him under circumstances tending strongly to show that it was intended as a fraud upon the creditors of Adolph Wehrman; that he took no steps to assert his title or right of possession to these lands, but practically abandoned the same until, by the increase of population and the settlement of the country, they had become of material value. Whether he had actual notice of the chancery suit or not, it is highly improbable that if he had been a *bona fide* purchaser of these lands, lying in another State, for which he had paid, or agreed to pay, $3000, (almost double their actual value,) he would have taken no steps for nearly thirty years to assert his right thereto. Particularly is this so in view of the fact that he was only an ordinary day laborer at the time he took the deed, having only a few farming implements and a meagre supply of household goods, and, as one of the witnesses expressed it, could not have borrowed without security one-tenth of the sum he was purported to have paid for the property.

Evidently he was not a man to invest $3000 in wild lands and turn his back upon them for twenty-seven years. As was said by this court in *Underwood* v. *Dugan*, 139 U. S. 380, 384, "ownership of property implies two things — first, attention to it; second, a discharge of all obligations, of taxation or otherwise, to the State which protects it. When it appears that one who now asserts a title to property, arising more than the lifetime of a generation ago, has during all these years neglected the property, and made no claim of title thereto, a reasonable presumption is that, whatever may be apparent on the face of the instrument supposed to create the title, were the full facts known, facts which cannot now be known by reason of the death of the parties to the transaction, it would be disclosed that no title was in fact obtained; or, if that be not true, that he considered the property of such little value that he abandoned it to the State which was protecting it." Considering all the facts of this case, it is not a matter of surprise that, when charged in this bill with having received his deed without consideration, and with intent to defraud the creditors of his brother Adolph, the defendant should not have been called to testify in relation to the transaction. In short, it would be difficult to conceive of a clearer case of estoppel *in pais*.

The decree of the court is therefore

*Affirmed.*