RUDLAND et al. v. MASTIC et al.

(Circuit Court, D. Washington, N. D.    December 22, 1896.)

EQUITY—JURISDICTION—STATUTE OF LIMITATIONS—IGNORANCE OF LEGAL RIGHTS.
    The fact that one claiming the legal title to land alleged to have been pat-
    ented to the heirs at law of her father has lived for many years in a wild
    and remote region, by reason of which she was ignorant of the issuance of
    the patent and the sale of the land by the administrator of her father's
    estate, does not entitle her, after her right to maintain ejectment has become
    barred, to relief in equity against the purchaser at the administrator's sale.

Lindsay, King & Turner, for complainants.
John B. Allen, for defendants.

HANFORD, District Judge.   This is a bill in equity by Sarah Rud-
land and her husband, James Rudland.   The object of the suit is
to establish the title of Sarah Rudland as the owner of a tract of
land in Jefferson county, in the state of Washington, under a pat-
ent from the United States to the heirs at law of James Tucker,
deceased, and to recover possession of said land.   The bill of com-
plaint avers:   That said James Tucker settled upon and claimed
said land under the act of congress approved September 27, 1850,
entitled "An act to create the office of surveyor general of public
lands in Oregon, and to provide for the survey, and to make dona-
tions to settlers of the said public lands," and the acts amendatory
thereof, commonly known as the "Oregon Donation Law" (9 Stat.
496; Abb. Real Prop. St. Wash. T. 1099).   That after the death
of said James Tucker the administrator of his estate made the re-
quired proofs of residence and improvement on his part.   That
the complainant Sarah Rudland was born in the year 1860, and is
the child of said James Tucker and an Indian woman, who lived
and cohabited together as man and wife.   Said James Tucker died
during the infancy of Sarah Rudland, in the year 1864.   After mak-
ing proof in the land office of said claim, the administrator sold
the land under an order of the probate court of Jefferson county,
and the defendants claim title thereto as vendees of the purchaser
at said sale.   They are now in possession of the land, and have been
continuously in possession since the year 1883.   The patent was
issued on the 9th day of June, 1876, to the heirs at law of James
Tucker and their heirs, and the bill of complaint avers that Sarah
Rudland is the only surviving heir of James Tucker, and the gran-
tee to whom the title was conveyed by said patent.   After the death
of her father, and during her infancy, Sarah Rudland was taken by
her mother to live among the Indians in British Columbia, and
continued to live a savage life in British Columbia and Alaska un-
til her marriage to James Rudland, in the year 1877; and by rea-
son of having so lived she was ignorant of her rights as owner of
said land until the year 1895.   The bill also charges the defend-
ants with having fraudulently obtained possession of the said pat-
ent, and having kept the same in their possession for the purpose of
concealing from Sarah Rudland knowledge of her title to the land.
It is the theory of this bill that the patent vested the title in

Sarah Rudland, as the donee of the government, and that the title did not pass through James Tucker, and that the administrator's deed pursuant to the probate sale was ineffectual to divest her of the title, and is wholly void, and that the defendants are in possession of the land, holding the same adversely to the complainants, in disregard of their rights.

The defendants have demurred to the bill on the ground that the facts stated are insufficient to entitle the complainants to any relief in equity. By the decisions of the supreme court it has become settled law that a suit in equity cannot be maintained in a federal court by a complainant claiming to have a perfect legal title against a defendant in actual possession of the property, and holding possession adversely to the complainant, for the reason that in every such case an action of ejectment can be maintained, and the parties have a constitutional right to a jury trial; and section 723, Rev. St., absolutely prohibits the United States courts from entertaining jurisdiction of suits in equity where the parties have a plain, adequate, and speedy remedy at law. Whitehead v. Shattuck, 138 U. S. 146–156, 11 Sup. Ct. 276; Wehrman v. Conklin, 155 U. S. 314–333, 15 Sup. Ct. 129. On the face of the bill it appears that the complainants might have a plain, speedy, and adequate remedy by an action at law to recover the land, except for the fact that the statute of limitations of this state constitutes a bar to such action; and it is obvious that the reason for bringing this suit in equity is to avoid the bar of the statute of limitations. In this, I think, the complainants have misconceived the theory and purpose of equity practice. The statute of limitations is a positive law, enacted for a wise purpose, and the courts were not endowed with equity powers for the purpose of overriding or annulling statutes, nor for the purpose of uprooting claims to real estate which, by continued possession for the period limited by the statute for commencing actions to recover possession, have ripened into perfect legal titles. That the statute does, in effect, transfer the legal title to the possessor of real property holding adversely, peaceably, and continuously for the full period allowed for bringing an action of ejectment, is affirmed by the weight of authority in the United States, and is the rule of the supreme court. Sharon v. Tucker, 144 U. S. 533–548, 12 Sup. Ct. 720–722. In the opinion of the court, by Mr. Justice Field, in the case cited, the doctrine is stated as follows:

"It is now well settled that by adverse possession for the period designated by the statute, not only is the remedy of the former owner gone, but his title has passed to the occupant, so that the latter can maintain ejectment for the possession against such former owner should he intrude upon the premises."

The facts alleged as to complainants' ignorance of their rights only make out a case of misfortune, but because this woman has been unfortunate in having spent the most of her life in ignorance does not make an exception in her favor, entitling her to exemption from the consequences of neglect to prosecute an action to recover her property within the time limited by law for the purpose. The facts upon which the defendants base their right of action were

77 F.—44

never-concealed, but, on the contrary, the evidence thereof has been preserved in the public records of the United States land office and of the probate court of Jefferson county, and were necessarily matters of common knowledge in Jefferson county when the several transactions took place. The reason why Sarah Rudland did not have timely knowledge of the facts is because she had gone to a remote and secluded region, and was cut off from the sources of information; but for this the defendants are not in fault, nor responsible. Upon this point the following comment, found in the opinion of Mr. Justice Bradley in the Broderick Will Case, 21 Wall. 503–520, is quite pertinent:

· "If fraud is kept concealed, so as not to come to the knowledge of the party injured, those courts will not charge him with laches or negligence in the vindication of his rights until after he has discovered the facts constituting the fraud. And this is most just. But that principle cannot avail the complainants in this case. By their own showing their delay was due, not to ignorance of the fraud, nor any attempt to conceal it, but to ignorance of Broderick's death, and all the open and public facts of the case. They admit, and expressly charge, that it was a matter of public notoriety at San Francisco, as early as 1861, that the will in question was not Broderick's will, but was a forged and simulated paper. They do not pretend that the facts of the fraud were shrouded in concealment, but their plea is that they lived in a remote and secluded region, far from means of information, and never heard of Broderick's death, or of the sale of his property, or of any events connected with the settlement of his estate, until many years after these events had transpired. Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem."

The allegations of fraudulent conduct on the part of the defendants are unimportant. The possession of the patent by the defendants was not the cause of the ignorance on the part of the complainants as to their rights, and in no wise prevented them from obtaining information, nor from proceeding to recover the property.

It is unnecessary to consider the questions argued as to the invalidity of the probate proceedings, and of the title under which the defendants claim, for, if the complainants can recover at all, they must proceed in a court of law; and the present suit must be dismissed, because there is no ground for the exercise of power by a court of equity.