### SULLIVAN TIMBER CO. v. CITY OF MOBILE.

(Circuit Court, S. D. Alabama. October 1, 1901.)

No. 227.

1. EQUITY JURISDICTION—FEDERAL COURTS—MULTIPLICITY OF SUITS.

A bill cannot be maintained in a federal court of equity on behalf of several complainants to enjoin the prosecution by defendant of actions at law against complainants on the ground of preventing a multiplicity of suits, where it is not shown that the issues in such actions, as between the defendant in the bill and the several complainants, depend upon the same questions of law and upon similar facts, nor that each of the complainants is entitled, by reason of diversity of citizenship, to sue in a federal court; nor will the fact that defendant has brought two actions in ejectment against a single complainant for separate parcels of land sustain such bill.

2. NAVIGABLE WATERS—SHORE LANDS IN MOBILE RIVER—EFFECT OF GRANT TO CITY.

By act of January 31, 1867, the state of Alabama granted to the city of Mobile the shore and the soil under the Mobile river situated within the boundary lines of the city, in trust to hold, possess, direct, control, and manage the shore and soil therein granted in such manner as it should deem best for the public good. By subsequent decisions of the supreme court of the state construing such act, which are binding in the federal courts, it was held that the effect of the act and its amendments was to vest the city with the legal title to the shore and soil under the river as trustee; the purpose being to transfer to the city the right and power of the state over such lands, to be exercised by it as the state should exercise them for the general good in preventing the navigability of the river being impaired, and in restraining purprestures along the river front below the water line, by prescribing the manner and extent to which wharves and other structures should be built into and over the water. *Held*, that the transfer of title and powers made by such act did not affect the riparian or littoral rights of owners of lands bounded by the high-tide water mark on such river, which remained the same as before.

3. SAME—RIPARIAN RIGHTS—CONSTRUCTION OF WHARVES.

Riparian rights, when recognized as existing by the law of the state or by local usage, are a valuable property, and among those rights are the right of access to the navigable part of a river from the front of his lot by an owner whose land is bounded by or abuts on the river, and the right to make a landing wharf or pier for his own use or the use of the public, subject to such general rules and regulations as the legislature may prescribe for the protection of the rights of the public.

4. SAME—LOCAL USAGE—JUDICIAL NOTICE.

The state of Alabama has not, by its legislature or through its supreme court, expressly declared or defined the nature and extent of the rights of riparian owners in the shore and soil under the navigable tide waters of the state; but the supreme court has recognized the usage of riparian owners to construct wharves from the earliest times, and a court is authorized to take judicial notice of the extent to which such a usage has notoriously obtained in a given locality.

5. SAME—RIGHTS IN MOBILE RIVER.

The legislature of Alabama and the city of Mobile, within its jurisdiction and under the powers conferred upon it by legislature, have at all times recognized the rights claimed and exercised by riparian owners along the Mobile river within the city to construct wharves in front of their property to reach navigable water, by prescribing regulations fixing the limits of such structures, the materials of which they should be built, the manner of their operation, and wharfage charges; and the rights of an owner acquired under such usage and recognition constitute a valuable property, which cannot be arbitrarily or capriciously destroyed or impaired.

6. SAME—CONSTRUCTION OF WHARVES—IMPLIED LICENSE.

Where a city which held the legal title to the shore and lands under the waters of a navigable river within its limits, and to which was delegated the powers of the state over the same, recognized the right of owners to build and maintain wharves and landings over such lands to navigable water, by making no objection to such structures, and by regulating the same and the manner of their construction, its action amounted to an implied license, which was irrevocable after it had been acted upon and expenditures made in reliance thereon.

7. SAME—EQUITABLE ESTOPPEL—CITY.

A city which has by long acquiescence in a general custom and usage given an implied license to a riparian property owner to construct and maintain wharves in front of its lands to navigable water in a river, over shore and submerged lands below high-tide water mark, to which the city held the legal title, and has for many years regulated and

taxed the structures of such owner, is equitably estopped from assert-
ing any claim to such lands which would dispossess the license or
destroy its property rights therein.

**8. EQUITY JURISDICTION—PROTECTION OF RIPARIAN RIGHTS—ENJOINING ACTION
    AT LAW.**
    A federal court of equity has jurisdiction of a suit to protect the
    riparian rights of a landowner from threatened destruction or impair-
    ment, where such rights do not rest upon a legal title, but upon a
    prescriptive use of shore and submerged lands lying between his
    boundary at high-tide water mark and the navigable water in a river,
    for the maintenance of wharves thereon; and in exercise of such juris-
    diction it may enjoin the prosecution of an action of ejectment for the
    recovery of such shore and submerged lands by a city which holds the
    legal title, but which, by its long acquiescence in their occupation by
    complainant, and in the expenditure of money in improvements thereon,
    is equitably estopped to assert such title to the impairment of complain-
    ant's rights.

In Equity.   On motion to dismiss, and demurrers to bill.

L. H. & E. W. Faith, for complainant.
Gregory L. & H. T. Smith, for defendant.

TOULMIN, District Judge.   This is a bill to enjoin the further
prosecution of two actions of ejectment, pending on the law side of
this court, which the city of Mobile has instituted against the com-
plainant, each for the recovery of a separate and distinct tract of land;
the two tracts being held by the complainant under different titles.
The case comes before the court on a motion to dismiss the bill for
the want of equity, and on demurrers to the bill.   The bill alleges
in a general way that the lands sued for lie below ordinary high-tide
water mark of the Mobile river, within the corporate limits of the
city of Mobile.   It does not as distinctly appear from the descrip-
tion of the lands in the bill itself as from the statements in the argu-
ment and briefs of counsel what the true character of the lands sued
for in the ejectment suits is,—whether upland or the shore between
high-tide water mark and the channel of the Mobile river; and, if
the shore or the soil under the river, whether complainant has
the legal title to the upland bounded by or abutting on said shore.
It may, however, be inferred that the lands sued for are shore lands
lying below ordinary high-tide water mark of the Mobile river; that
complainant has the legal title to the upland bounded by or abutting
on said shore lands; and that the wharves and other improvements
made by complainant and those under whom it claims title are erect-
ed over said shore out to the channel or navigable part of the river.
As it has been so assumed in the argument of the cause, I will ex-
press my views on the legal points raised by counsel, leaving the bill
to be amended, if it can be done, to make more clear its allegations
as to the locus in quo of the property so sued for, and the relation
of complainant thereto.

The complainant seeks to support the equity of the bill upon three
grounds, viz.:   (1) To avoid a multiplicity of suits; (2) to quiet com-
plainant's franchise or property right to build and wharf out over
the shore and soil of Mobile river to the navigable water thereof; and
(3) to enjoin the ejectment suits against it on the ground that it has
an equitable defense thereto, arising out of an estoppel in pais against

the city of Mobile, the plaintiff in those suits, which it is alleged cannot be interposed at law.

There is a class of cases where a number of persons, having separate and individual claims and rights of action against the same party, all arising from some common cause and governed by the same legal rule, and involving similar facts, may unite in a single suit for the settlement of the whole matter. 1 Pom. Eq. Jur. § 245. But it does not appear from the allegations of the bill that the issue between the city of Mobile and each of those persons on whose behalf it is filed depends upon precisely the same questions of law and upon similar facts. It does not appear that such persons have a common source of title, and that the claim of the city would be good or bad against all, as it may be good or bad against any one of them. Osborne v. Railroad Co. (C. C.) 43 Fed. 824. Besides, it does not appear that by reason of diverse citizenship those who are sought to be made cocomplainants are entitled to invoke the jurisdiction of this court, and the bringing of two actions of ejectment by the city of Mobile against complainant for separate parcels of land does not authorize the maintenance of the bill on the ground that it is to avoid a multiplicity of suits. While the bill fails to show an admission by complainant of the legal title in defendant to the lands in question,—on the contrary, it impliedly denies it,—yet the allegations of the bill show the legal title to be in defendant. The acts of the legislature of Alabama, under which the city of Mobile claims the title to the property, are set out in the bill; and the supreme court of the state, in the case of Mobile Transp. Co. v. City of Mobile (not yet officially reported) 30 South. 645, has construed those acts, and held that under them, by grant of the state, the legal title to the shore of the Mobile river, as described in the act of January 31, 1867, became vested in the city of Mobile; that the evidence introduced in that case showed a valid legal title to the land sued for in the city of Mobile, unaffected by limitation or an estoppel of any character; and that the city of Mobile was entitled to recover in that case the shore land sued for below the high tide. Id. The land granted by the act of January 31, 1867, is described therein as "the shore and the soil under Mobile river, situated within the boundary lines of the city of Mobile." The act declares that "the mayor, aldermen, and common council of the city of Mobile are created and declared trustees to hold, possess, direct, control and manage the shore and soil therein granted in such manner as they may deem best for the public good." The supreme court of Alabama in the case above referred to said that "the title of the city of Mobile was derived from the state of Alabama through, and by the act of the legislature of January 31, 1867, supplemented by the acts of February 18, 1895, and of December 5, 1896; the latter being amendatory of the former, and confirming and vesting all rights theretofore vested in any municipal corporation of Mobile in the city of Mobile." The title theretofore vested in the municipal corporation of Mobile was that of trustee. The substance and effect of the decision is that the state granted the fee in "the shore and soil under the Mobile river" to the city of Mobile, to be held as trustee for and in furtherance of the public interest, and that the legal title conveyed

by the grant must in that case prevail in a court of law. Mobile Transp. Co. v. City of Mobile, supra. In the case of Mayor, etc., v. Moog, 53 Ala. 568, the supreme court of Alabama, in construing the act referred to, said:

"The direct effect of the act, if valid, and its object, would seem rather to be to transfer the right and power of the state in and over the shore of the river and the soil under it, in front of Mobile, to the city, to be exercised by it, as the state should exercise them, for the general good, in preventing the navigability of the river being impaired, and in restraining purprestures along the river front below the water line, by prescribing the manner and the extent to which wharves and other structures should be built into and over the water." 53 Ala. 568.

The court, in Mobile Transp. Co. v. City of Mobile, further held that, on streams where the tide ebbs and flows, grants of adjoining lands only extend to the ordinary high tide along the shore. I do not understand the decision as passing on the right to accretions, or as determining the nature and extent of the riparian or littoral rights of the owner of lands bounded by or abutting on such streams. The decisions of the highest court of a state in the construction of its laws, and in the determination of the rules of property therein, are of controlling authority in the federal courts. City of St. Louis v. Rutz, 138 U. S. 226, 11 Sup. Ct. 337, 34 L. Ed. 941; Knight v. Association, 142 U. S. 183, 12 Sup. Ct. 258, 35 L. Ed. 974; Lumber Co. v. Ott, 142 U. S. 622, 12 Sup. Ct. 318, 35 L. Ed. 1136; May v. Tenney, 148 U. S. 60, 13 Sup. Ct. 491, 37 L. Ed. 368; Minneapolis Mill Co. v. Board of Water Com'rs of City of St. Paul, 168 U. S. 349, 18 Sup. Ct. 157, 42 L. Ed. 497; Leovy v. U. S., 177 U. S. 629, 20 Sup. Ct. 797, 44 L. Ed. 914. The decision in the case of Mobile Transp. Co. v. City of Mobile is binding on this court, and will be followed by it.

Assuming, then, that the city of Mobile has the legal title to the lands sued for, the contention of complainant is that it has a franchise right or easement to build and wharf out over said lands to the navigable water of Mobile river, which franchise is a property right that this court of equity should protect from invasion or interference, and, further, that it has defenses of an equitable character against the claim of the city of Mobile, which are not available to it in the actions of ejectment, and hence it appeals to this court and invokes its aid in the premises. The complainant does not claim that it has the legal title to the land sued for. It does not claim that its title extends to the shore below the high-tide water mark, but its claim is that it is the owner of the upland which is bounded by and abuts on the tide-water shore sued for, and that it has rights incident to riparian ownership,—rights which attach to the ownership of land bounded by or abutting on the margin of a navigable river, whether below or above tide water. Complainant's claim for relief in this court is based on the theory that the court has jurisdiction to enjoin any intended or threatened destruction or impairment by the city of Mobile of its rights as a riparian proprietor of the tide-water shore in front of its land, and also on the theory that its equitable defense to the ejectment suits arises out of an estoppel in pais against the

city, and is not available in such suits. The bill alleges that complainant has been in the actual possession and occupancy of the land in question for many years, claiming the same as its own; that, before any improvements were made on it, it was marsh land and useless, and possessed no value except the value of the access to the Mobile river, and other littoral and riparian rights; that to make said land useful and of any practical value, and to obtain access over the same to the actual navigable waters of the river in front of complainant's upland, it was necessary to fill in and reclaim the same; that the complainant and those under whom it claims have, at great expense, filled in and reclaimed the lowland which was subject to the ebb and flow of the tide in front of its said upland, and have constructed valuable wharves, landings, and bulkheads or booms out to and fronting on the channel of Mobile river, and have erected large and permanent and valuable sawmills and other improvements on said land. The bill alleges that by an act of the legislature of Alabama the city of Mobile was vested with power to establish and declare a designated line along the river front within the corporate limits of the city, beyond which wharves or other structures shall not be erected or extended, and with power to determine and declare by ordinance to what extent and in what manner wharves or other structures along said river front shall be constructed, but provided that such ordinance should not affect any wharves already established; that, acting under said authority, the city of Mobile passed an ordinance providing that it shall not be lawful to construct any wharf within the limits of the city of Mobile which shall extend into the channel of Mobile river beyond a certain line designated and established, and further providing that, before beginning to construct or extend any wharf within the limits of the city of Mobile, the person proposing to construct or extend the same shall first obtain a permit therefor from the civil engineer of the city, in which shall be accurately given the lines established, and the wharf when constructed shall neither extend beyond nor fall short of said lines. The bill shows that subsequent to the act referred to the legislature passed another act, as an amendment thereto, conferring on the city of Mobile the power to establish and declare a designated line along the river front within the corporate limits of the city of Mobile, beyond which wharves or other structures shall not be erected or extended, unless the legislature shall create a harbor or dock commission clothed with the power of regulating wharf and boom lines in that portion of Mobile river, in which case the power of the city of Mobile in the premises shall be suspended so long as said commission is clothed with such power. The bill further shows that a short time thereafter the legislature passed an act creating a river commission for Mobile river, with the jurisdiction, power, and duty to establish from time to time bulkhead, wharf, and boom lines, and providing that it shall be unlawful for any person to build or maintain a bulkhead, wharf, boom, or similar structure otherwise than in conformity with the lines so established by said commission, or in manner and form contrary to the regulations established by the said commission. The act last referred to also provides that no one shall erect or place

any bulkhead, wharf, boom, etc., in any of the waters mentioned in the act without first making an application in writing to the commission, which application shall describe the nature and exact location of such proposed structure, giving specifications and a diagram thereof, and that the petitioner shall at the time of filing his application deposit with the city clerk certain fees provided for in the act, and calculated on the dimensions of the structure proposed to be erected. All the acts referred to are set out in the bill. The bill further alleges that the structures erected by the complainant were made in reliance upon the invitation and license granted by the state of Alabama and by the city of Mobile in the said several acts and ordinances, and in conformity with the requirements thereof. It is now well settled that the title and rights of riparian or littoral proprietors in the shore and soil below high-water mark of navigable waters are governed by the local laws of the several states, subject to the rights granted to the United States by the constitution. Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331. In the opinion of the supreme court of the United States in the case of Yates v. City of Milwaukee, 10 Wall. 497, 19 L. Ed. 984, it is said that the owner of land adjoining any navigable water, whether within or above the ebb and flow of the tide, has, independently of local law, a right in the soil below high-water mark, and the right to build out wharves so far, at least, as to reach water really navigable. The court also said that "this riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired." This decision has been cited with approval in several succeeding opinions by the supreme court. See Weber v. Commissioners, 18 Wall. 64, 21 L. Ed. 798; Potomac Steamboat Co. v. Upper Potomac Steamboat Co., 109 U. S. 682, 3 Sup. Ct. 445, 4 Sup. Ct. 15, 27 L. Ed. 1070; Scranton v. Wheeler, 21 Sup. Ct. 48, 45 L. Ed. 126. But in Shively v. Bowlby, supra, the court intimates that it went too far in the opinion in Yates v. Milwaukee in saying that the riparian owner had, independently of local law, a right of property in the soil below high-water mark, and the right to build out wharves to reach navigable water, and holds that it is now clearly established that the title and rights of riparian proprietors in the soil below high-water mark of navigable waters are governed by the local laws of the several states, subject to the rights granted to the United States by the constitution. The court says that "the common law of England upon this subject at the time of the emigration of our ancestors is the law of this country, except so far as it has been modified by the charters, constitutions, statutes, or usages of the several colonies and states, or by the constitution and laws of the United States." By the common law of England the title in and dominion over the soil of the sea, and of rivers and arms of the sea, below ordinary high-water mark, are in the king, except so far as an individual or a corporation has acquired rights in it by express grant or by prescription or usage. By that law, also, every building or wharf erected without license below high-water mark, where the soil is the king's, is a purpresture, and may, at the suit of the king, either be demolished or seized for his benefit, wheth-

er it be a nuisance and tends to obstruct navigation or otherwise. Shively v. Bowlby, 152 U. S. 13, 14, 14 Sup. Ct. 552, 38 L. Ed. 337. "In the colonies and original states, by various laws and usages, the owners of land bordering on tide waters were allowed greater rights and privileges in the shore below high-water mark than they had in England. But the nature and degree of such rights and privileges differed in the different colonies and states, and in some were created by statute, while in others they rested upon usage alone." Shively v. Bowlby, supra. The supreme court in Shively v. Bowlby, in commenting on several of its former decisions, in which it was held that the owner of land adjoining any navigable water had a right of property in the soil below high-water mark, and the right to build out wharves, piers, and landing places to reach water really navigable, said these cases "distinctly recognized the diversity of laws and usages in the different states upon this subject," and went no further than to say that wharves, piers, and landing places, "where they conform to the regulations of the state," and do not extend below low-water mark, have never been held to be nuisances unless they obstruct the paramount right of navigation; that the right of the riparian proprietor to erect such structures in the navigable waters of the Atlantic states has been claimed, exercised, and sanctioned from the first settlement of the country to the present time; that different states adopted different regulations on the subject, and in some the right of the riparian proprietor rests upon immemorial local usage. In Weber v. Commissioners, 18 Wall. 64, 21 L. Ed. 798, the court, recognizing the doctrine "that a riparian proprietor whose land is bounded by a navigable stream has the right of access to the navigable part of the stream in front of his land, and to construct a wharf or pier projecting into the stream, for his own use or the use of others, subject to such general rules and regulations as the legislature may prescribe for the protection of the public," said, "In the absence of such legislation or usage, however, the common-law rule would govern the rights of the proprietor, at least in those states where the common law obtains."

The cases cited, I think, are authority for the proposition that riparian rights, when recognized as existing by the law of the state or by local usage, are a valuable property. Among those rights are access to the navigable part of a river from the front of his lot by an owner whose land is bounded by or abuts on the river, and the right to make a landing, wharf, or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public. Yates v. City of Milwaukee, supra.

As I understand the allegations of the bill, there is no question raised in this case as to the right or ownership of the accretions or alluvion; but I may remark here that it is well settled that, where the land encroaches upon the water by gradual and imperceptible degrees, the accretions or alluvion belong to the owner of the land bounded on the waters, whether tide or fresh, and are independent of the law governing the title in the soil covered by the water. Shively v. Bowlby, supra; Gould, Waters, §§ 155, 157. Where the

accretions are artificially made, they go with the title to the soil covered by the water, and the title to them is in the owner of such soil,—to the state or its grantee. The state of Alabama has not, by its legislature or through its supreme court, expressly declared or defined the nature and extent of the rights of riparian owners in the shore and soil under navigable tide waters in the state. But the supreme court of Alabama has said that "riparian owners have claimed and exercised the right to construct wharves and landing places on navigable streams from the earliest settlement of this country, subject to the limitation that the public easement or servitude is not impaired." Compton v. Hankins, 90 Ala. 414, 8 South. 76, 24 Am. St. Rep. 825. Courts may take judicial notice of matters of public notoriety and general information, and will generally take notice of whatever ought to be generally known within their jurisdiction. 1 Greenl. Ev. §§ 6–17; 2 Am. & Eng. Enc. Law (2d Ed.) 940. It is common knowledge that within the limits of the city of Mobile riparian owners have claimed and exercised the right to construct wharves, landings, bulkheads, and booms along the Mobile river front, and that such wharves and other like structures are built out to the navigable part of the river, and that there has existed here for many years a usage under which this right by such owners has been claimed and exercised. The authority of the state, and of the city of Mobile under the grant to it by the state, to exercise police power over the navigable river and its shores, is not inconsistent with a right of the owners of the bank to erect wharves or other structures which shall be in aid of commerce, and which do not impede the public navigation. The usage referred to and the rights exercised under it have been recognized by the state of Alabama and the city of Mobile in their legislation and by their conduct in relation to the same; in their legislation prescribing the manner and material of which wharves and other like structures shall be built, their extent, and the limit to which they may go and within which they shall not stop; providing for the appointment of officers to fix rules and regulations on the subject, and to see that they are complied with; in their legislation declaring wharves subject to taxation; and in the legislation of the state in reference to wharfage charges, authorizing the same, and giving liens therefor (Const. Ala. p. 66, § 25; Code, Ala. § 2514); and in its legislation authorizing the city of Mobile to obtain by contract or purchase the property in or control of the wharves and wharf property in the city of Mobile. Charter of the City of Mobile of 1866, § 60; Acts of the Legislature of 1865–66, pp. 223, 225. Such rights of the riparian owner, having been acquired by usage, and their existence being thus recognized by the state and by the city of Mobile, are a valuable property, and cannot be arbitrarily or capriciously destroyed or impaired, though they must be enjoyed subject to such general rules and regulations as the legislature may prescribe, for the protection of the rights of the public in the navigation of the river. Yates v. City of Milwaukee, supra; Weber v. Commissioners, supra; Illinois Cent. R. Co. v. Illinois, 146 U. S. 445, 13 Sup. Ct. 110, 36 L. Ed. 1018. In this court, more than 30 years ago, in a case involving, among others, the question of a riparian owner's right to wharf

out on the river front of the city of Mobile, the judge delivering the opinion in the case said:

"The general right before mentioned as belonging to a riparian proprietor is co-extensive with the limits of the city. This general right is sustained by possession, user, enjoyment, recognition in state and municipal legislation, and by general acquiescence." Leverich v. Mayor, etc. (C. C.) 110 Fed. 170.

These observations, I think, may justly be applied to this case.

It is further contended that if it be conceded that complainant had not by franchise or usage a right to build out wharves, landings, and booms to the channel or navigable part of the river, the legislation of the state and the ordinances of the city of Mobile passed pursuant to such legislation were a regulation of the exercise of the riparian rights of complainant and all other persons entitled to such rights within the limits of the city of Mobile,—a settlement of the line of navigability of the river,—and were an implied license or concession of the right to build out, possess, and occupy to the established line, which amounted practically to a qualified possessory title. While this legislation and the acts of the state and the city thereunder were not a grant, they, in my opinion, implied a license to complainant and other persons similarly situated to construct or extend a wharf or other structure into the channel of Mobile river, provided it be done in conformity with such legislation and the rules and regulations prescribed by authority of the state. There was no license expressly granted, but it was clearly implied. There was conferred on the licensee no estate or title in the shore or soil under the river over which such structures were to be constructed, but a privilege or license was given to be exercised in conformity with certain rules and regulations to be prescribed therefor. "A license, in the law of real estate, is an authority to do an act or a series of acts on the land of the person granting the license, without conferring on the licensee any estate in the land." And a license may be implied from the acts of the parties. 2 Am. & Eng. Enc. Law (2d Ed.) 1132. "The right to wharf out may rest upon passive or implied license merely." Cohn v. Boom Co., 47 Wis. 314, 2 N. W. 546; Diedrich v. Railway Co., 42 Wis. 262; 2 Am. & Eng. Enc. Law (2d Ed.) supra. At common law an owner of land fronting on a navigable river has a right of access to the navigable part of the river, but if he erects a wharf or other building, without license, below high-water mark, where the soil is the king's it may, at the suit of the king, be demolished or seized. Yet such owner may acquire the right to erect a wharf or other building by charter or grant or license, and also by prescription or usage. Shively v. Bowlby, supra, and authorities therein cited. Here, as I have said, the legal title to the shore or soil below high-water mark is in the state, or in the city of Mobile by grant of the state. As already said, there is in this state no positive law or judicial rule prescribing the nature and extent of the riparian rights of owners of land on tide water within the limits of the city of Mobile, but that it is common knowledge that such owners have by long usage been accorded and have exercised the right to build wharves and other structures upon the flats or shore lands in front of their

uplands, and out to the navigable part of the Mobile river. The exercise of such right is not prohibited by any law of the state. It may reasonably be presumed that the legislature of Alabama, recognizing the fact that such owners have by long usage, "if not from the earliest settlement of the country," claimed and exercised the right to construct wharves, landings, and other structures in front of their upland out to the navigable part of the river, enacted the legislation we have been considering for the purpose of protecting the public easement or servitude in the navigation of the river. That legislation, as we have seen, provides that it shall be unlawful to construct such wharves or other structures unless it be done in conformity with the rules and regulations prescribed by the state or under its authority. It seems to me clear that, when the state of Alabama and the city of Mobile concur in saying to any person who proposes to build or extend a wharf or other structure into the channel of Mobile river that it shall be unlawful for him to do so unless he conforms to certain rules and regulations, they virtually say to him, if he constructs his said structures in conformity with such rules and regulations, it shall be lawful for him to do so.

It is alleged in the bill that complainant constructed the wharf and other structures on the land involved in the ejectment suits under and by virtue of the invitation and license of the state of Alabama and of the city of Mobile, and that they were constructed in strict conformity with the state and city legislation on the subject, and with the rules and regulations thereunder prescribed. This license did not vest any right until exercised, and could only be exercised by one possessing riparian rights; but when executed it was a lawful exercise of a privilege or license, which became irrevocable, and especially where expenditures were made in reliance upon the license, as is alleged in the bill. 2 Am. & Eng. Enc. Law (2d Ed.) 1145; Rhodes v. Otis, 33 Ala. 578; Shively v. Bowlby, supra. To the contention of the defendant that, if any such license ever existed, it was revoked by the act of the legislature of January 31, 1867, it may be answered that the bill shows that the wharf and other structures referred to were constructed subsequent to the passage of the act, and hence the act could not have had the effect claimed for it, and, further, that the supreme court of Alabama has said that the direct effect and object of that act were to transfer the right and power of the state in and over the shore of the river and soil under it in front of Mobile to the city, to be exercised by it, as the state should exercise them, for the general good, in preventing the navigability of the river being impaired, and in restraining purprestures along the river front below the high-water line, by prescribing the manner in which structures should be built into or over the water. Mayor, etc., v. Moog, supra. All riparian rights depend upon the ownership of land which is contiguous to and touches upon the water, and in the case of tide waters, at common law, upon the ownership of the land above and adjoining the edge of the water at ordinary high-water mark. Gould, Waters, § 148; Yates v. City of Milwaukee, 10 Wall. 497, 19 L. Ed. 984. On navigable tide waters the "shore" is the space between ordinary high water and low water. It is owned by the sovereign or state. The

shore of the Mobile river within the limits of the city of Mobile is owned by the city under the grant by the state. The title of the owner of the upland stops at the high-water mark. Such owner is a riparian owner or proprietor, and possesses rights incident to such ownership. Such rights are access to the navigable water on the front of which lies his land, and for that purpose to make a landing, wharf, or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may prescribe for the protection of the rights of the public. Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018; Yates v. City of Milwaukee, supra; Weber v. Commissioners, supra; Gould, Waters, § 148 et seq.

A further ground of relief alleged in the bill is that by its acts and conduct the city of Mobile has estopped itself, as against complainant, from asserting any claim which would annul complainant's rights to the property in question, or would invade or impair complainant's free use and enjoyment of the same. The substance of the contention on this proposition is that the long possession of complainant and those under whom it claims; the large expenditures made by them in improvements upon the land; the acts and conduct of the city of Mobile in permitting complainant and its grantors to fill in the low or marsh land in front of its upland, and to erect valuable improvements thereon, without interference or objection; in authorizing and directing the construction of some of the improvements; in establishing and designating the limit or line to which the wharves, landings, and bulkheads, etc., constructed by complainant should be extended; the long acquiescence of the city of Mobile in complainant's possession and use of the property under claim of right; the taxation of the property as that of complainant by the city of Mobile; the staleness of the city's claim; the lapse of more than 30 years since it acquired its title; and its laches in enforcing its title,—all show a practical abandonment of all claim to the property by the city, and equitably estop it from questioning the legality of that which has been done by complainant, and from now claiming ownership of the land in question, and the right to dispossess complainant of the same to its prejudice. Equitable estoppels arise upon facts which render their application in the protection of rights equitable and just, and courts of equity recognize them in cases of equitable cognizance, but they are available at law as well as in equity. "An equitable estoppel as a defense is available at law as well as in equity in the federal courts." Dickson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; 11 Am. & Eng. Enc. Law (2d Ed.) 420; Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79; Berry v. Seawall, 13 C. C. A. 101, 65 Fed. 753. Under the rule of law in Alabama, equitable estoppels do not operate to devest the legal title of lands, and in a court of law there can be no estoppel affecting the title to land. Standifer v. Swann, 78 Ala. 93; Hendricks v. Kelly, 64 Ala. 388. But a court of equity accords full effect and operation to it. South & North Alabama R. Co. v. Alabama G. S. R. Co., 102 Ala. 236, 14 South. 747. Although an equitable estoppel is an available defense to an action at law in the federal courts, it is also available in a court of equity when the

case shows some ground of equity other than the estoppel itself. Drexel v. Berney, 122 U. S. 241, 7 Sup. Ct. 1200, 30 L. Ed. 1219; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167; Davis v. Wakelee, 156 U. S. 688, 15 Sup. Ct. 155, 39 L. Ed. 578.

The ground of equity on which the court takes cognizance of this case and sustains the bill is that it seeks to protect complainant's riparian rights from invasion and impairment,—rights which are undoubted elements in the value of its property, and which are intended or threatened to be destroyed or abridged by the ejectment suits which are asked to be enjoined. The right of complainant is one not protected by legal title, but in and of itself appeals to the conscience of a court of equity. In such case the court should act, and establish and protect its right. "Where equity can give relief, complainant ought not to be compelled to speculate upon the chance of obtaining relief at law." Davis v. Wakelee, supra. In Railroad Co. v. Jones, 68 Ala. 49, the court said:

"When the owner of land has knowledge of the fact that a railroad is proceeding to locate and construct its road on his lands, and allows it to expend large sums of money on improvements for the purpose without interfering or forbidding it to proceed, he will be estopped from evicting it by ejectment."

South & North Alabama R. Co. v. Alabama G. S. R. Co., supra; 11 Am. & Eng. Enc. Law (2d Ed.) 428, 429.

In Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79, the court said:

"If a man knowingly, although he does it passively, looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his own claim, he shall not afterwards be permitted to exercise his legal right against such person."

"Lord Mansfield would not suffer a man to recover, even in ejectment, where he had stood by and seen the defendant build on his land." Kirk v. Hamilton, supra.

The staleness of the claim of the city of Mobile, the lapse of time, or the statute of limitations cannot avail the complainant; that is to say, the complainant cannot avail itself, as a matter of law, of the laches of the city of Mobile, the plaintiff in the ejectment suits, in asserting its claim of title. Such laches, however, may be considered as one of the facts of the case tending to show an estoppel. Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167. Municipal corporations are concluded by estoppel as much as individuals. Bissell v. City of Jeffersonville, 24 How. 287, 16 L. Ed. 664; Hackett v. City of Ottawa, 99 U. S. 86, 25 L. Ed. 363; Town of Brewton v. Spira, 106 Ala. 235, 17 South. 606. In Bissell v. City of Jeffersonville the court said:

"A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot by their representations or silence involve others in onerous engagements, and then defeat the calculations and claims their own conduct superinduced."

2 Story, Eq. Jur. § 154.

My opinion is that a case of equitable estoppel against the city of Mobile has been shown by the allegations of the bill. My conclusions are (1) that the bill cannot be sustained on the ground that it

seeks to avoid a multiplicity of suits; (2) that there is equity in the bill, in that it seeks to protect the complainant's property or proprietary rights as a riparian owner from invasion or impairment, and to settle and quiet the exercise and enjoyment of the same; (3) that the city of Mobile is equitably estopped from asserting its title to the land sued for in said actions of ejectment.   The motion to dismiss the bill for want of equity is denied, and the demurrers to the bill are each and all overruled, except the demurrer thereto, in so far as it is filed on behalf of persons other than complainant, and wherein it seeks to avoid a multiplicity of suits, which said demurrer is sustained.   Let a decree be entered in accordance herewith.