### SULLIVAN TIMBER CO. v. CITY OF MOBILE.

#### (Circuit Court, S. D. Alabama. August 1, 1903.)

#### No. 227.

1. NAVIGABLE WATERS—MOBILE RIVER—SHORE LAND—CONSTRUCTION OF WHARVES—CUSTOM.

   Where the owners of land abutting on the tide waters of the Mobile river, within the city of Mobile, by long usage and immemorial custom had been accorded the right to build wharves, bulkheads, booms, and other structures on the flats and in the river in front of their uplands, which did not impede navigation, an owner of such uplands was entitled to use the shore of the river in connection with the upland, including the right to erect piers, wharves, etc., according to the custom.

2. SAME—IMPLIED LICENSE.

   The title to the shore of the Mobile river was vested in the city of Mobile, and thereafter the control thereof was vested in the Mobile river commission, which was authorized to establish bulkheads, wharves, drydocks, and boom lines, and provide for their construction on licenses or permission granted by the commission to owners of upland on payment of certain fees. The commission thereafter authorized complainants to construct certain wharves in the river adjoining their land, and the city made no objection to the structures as erected for several years. *Held*, that the city's failure to object, and regulation of such wharf, etc., after its construction, estopped it to deny complainant's right to continue to occupy and use the same so long as the necessities of its business required.

3. SAME—INJUNCTION.

   Where the owner of uplands abutting the Mobile river was authorized by the Mobile river commission to construct certain docks, wharves, etc., in the river opposite its land, in which the city acquiesced for a number of years, such owner is entitled to an injunction to restrain the city from recovering the shores occupied by such wharves.

In Equity.

See 110 Fed. 186.

L. H. & E. W. Faith, for complainant.

Gregory L. & H. T. Smith, for defendant.

TOULMIN, District Judge. The complainant is the owner and in possession of the lands in front of which lies the land for the recovery of which the city of Mobile has sued in ejectment. Complainant's said land on the west side of Mobile river is bounded on the east by said river, and its land on the east side of said river is bounded on the west by the river.

The land in litigation with which we are here concerned is that which was the shore under Mobile river on January 31, 1867. The legal title to this land is in the city of Mobile by virtue of an act of the Legislature of Alabama of January 31, 1867.

Complainant's lands being on tide water, it has no title below high-water mark.

Has the complainant made out a case of estoppel against the city to assert its legal title to the shore land sued for?

More than 35 years ago, to wit, on May 18, 1868, this court adjudicated "that from the establishment of Mobile as a port of entry there has been a custom for the riparian owners to erect wharves in front of their lands and to collect wharfage for the use of the same; that these improvements have been recognized and sanctioned in the laws of the state and the ordinances and administration of the city government." See decree of this court in Leverich v. City of Mobile (C. C.) 110 Fed. 170.

I find from the evidence that by long usage and immemorial custom the owners of land abutting on the tide waters of Mobile river within the city of Mobile, have been accorded the right to build wharves, bulkheads, booms, and other structures upon the flats and in the river in front of their uplands, provided they do not impede navigation.

I find that the complainant, and those under whom it claims title and possession to the land abutting on the shore in litigation on the west side of Mobile river, have for 15 or 20 years, from time to time, built bulkheads, wharves, and booms in front of their uplands, and out to the channel or navigable part of the river; that the complainant has erected, during the past 15 years, extensive and valuable improvements on its said land, which are devoted to the manufacture and exporting of lumber; and that the bulkheads, wharves, booms, and other like structures built by it in front of its land and over the shore in question are used in connection with its said lumber business, and are essential thereto, at least to its successful operation; and that complainant has expended large sums of money in the construction and maintenance of such bulkheads, wharves, booms, and other structures.

By act of the Legislature of December 10, 1886 (Acts 1886-87, p. 238, § 22), it was provided that the city of Mobile shall have the power to designate and regulate wharf and boom lines along the river front, within the city of Mobile, unless the Legislature shall create a commission clothed with that power, in which case the power of the city in the premises should be suspended. Prior to this act the city had exercised that power to some extent, but not so fully as subsequently done by the Mobile river commission, which was created by an act of the Legislature of February 28, 1887 (Acts 1886-87, p. 647). By the latter act it was made the duty of said commission to establish bulkhead, wharf, drydock, and boom lines, and lines for similar structures. The act also provided that any one proposing to erect or place any bulkhead, wharf, boom, or similar structure in said waters shall make application to said commission, describing the nature and exact location of such proposed structure, and shall at the same time

deposit with the city clerk 15 cents per foot for each lineal foot of the proposed boom, and 25 cents per foot for each lineal foot of wharf, bulkhead, or similar structure. Said commission has since its organization exercised jurisdiction over the water and shore of Mobile river, under the provisions of said act.

I find that complainant applied to said commission, from time to time, for the designation of the lines for the wharves and booms proposed to be constructed by it in front of its lands on both sides of the river, and deposited the fees prescribed by law therefor; that the application was granted, and such structures were built in accordance with the license or permission from said commission, and approved by the city engineer, acting under the direction of the commission, perhaps with this exception: I do not find from the evidence that the wharves proposed to be built on the east side of the river in front of Pinto's Island were ever built, but the evidence shows that a structure, called a "lumber bed," and also a boom on said east side of the river, were built. It does not clearly appear from any direct evidence on the subject that any specific application was made to the commission for permission to erect said lumber bed, or that there was any express permission given therefor, but it does appear that the ordinary fees were paid for the same, and that the city engineer designated the line on which it was erected. Said lumber bed was built about 8 years ago on the shore under the water, and from 50 to 100 feet in front of complainant's land, in water from 2 to 5 feet deep. It does not connect with the upland, but is used in connection with the mill on the opposite side of the river, as a depository of lumber manufactured at the mill, and from which the lumber is loaded on vessels and shipped.

I find that neither the city of Mobile nor the said river commission ever made any objection to, or protest against, the filling in of the low lands, or the construction of the bulkheads, wharves, booms, and other structures erected over the shore and water in front of their uplands, by complainant and those under whom it claims, which from time to time was being done at large expense, during a period of 15 or more years, but, on the contrary, that since the creation of said commission said structures have been erected or placed with the express permission or license from the commission, and for a consideration, in the shape of the fees required by law to be paid. As to the erection of the lumber bed before mentioned, it does not clearly appear that there was any express permission or license therefor, but from the facts and circumstance shown a license may be justly implied.

By the act creating the Mobile river commission the powers theretofore vested in and exercised by the city of Mobile devolved upon said commission, somewhat enlarged. By that act the mayor of the city was made a member of the commission, the clerk of the city its clerk, and the engineer of the city required, under the direction of the commission, to perform certain services in connection with the designation of the lines therefor, and the construction of wharves, booms, and other similar structures.

I find that the city of Mobile, with full knowledge that the complainant, and those under whom it claims title and possession of its said uplands, were making improvements in their front at large ex-

pense, by filling in low lands, building bulkheads, wharves, booms, and other structures in and over the shore and river (including the lumber bed in front of Pinto's Island), stood silently by and permitted it to be done without objection, and without challenge of the occupation and use being made by them during a long series of years. On the contrary, the city of Mobile, prior to the creation and organization of the Mobile river commission, designated by ordinance the lines to which structures, such as bulkheads, wharves, etc., should extend, and short of which they should not stop, if built, and provided for supervising the character of the work and the manner in which it should be done.

There is no evidence that said structures have in any way impeded or interfered with navigation, and none of a notification by the city of Mobile or the river commission of revocation of any license given by said river commission to complainant, or of any claim of a right of revocation prior to the bringing of the suit in ejectment by the city of Mobile. The usage and custom referred to has been recognized, and apparently sanctioned by the legislation of the state and city, and the principles on which rights were exercised thereunder recognized and upheld by the judicial decisions of the state. Turner v. City of Mobile, 135 Ala. 73, 33 South. 132, and citations therein of the laws of the state and city; Sullivan v. Spotswood, 82 Ala. 163, 2 South. 716; Compton v. Hankins, 90 Ala. 414, 8 South. 75, 9 L. R. A. 387, 24 Am. St. Rep. 823; Sullivan Timber Co. v. City of Mobile (C. C.) 110 Fed. 186.

The Supreme Court of Alabama in Turner v. City of Mobile, supra, said:

"If the complainants have no rights in the shore referable to their ownership of the upland, or the uses they may have made or may be making of the shore in connection with the upland, they, of course, have presented no case of equitable cognizance, nor would they have any standing at law against an action of ejectment prosecuted by the city, the owner of the shore."

The converse proposition must also be true. If the complainant has rights in the shore referable to its ownership of the upland, or the uses it may have made or may be making of the shore in connection with the upland, it has presented a case of equitable cognizance, or would have a standing at law against an action of ejectment prosecuted by the city, the owner of the shore.

The Supreme Court, proceeding in said Turner Case, said:

"Assuming that complainants owned upland abutting on the shore lot for the recovery of which the city has sued, and by reason of such littoral proprietorship they had or have the right to wharf out across the shore lot, that right must rest or must have rested upon one of two conditions: It must be or must have been either a mere license to erect their wharves on and across the shore, or it must be or must have been something more than a mere parol license from the owner of land to another, having no interest or right in it, to do something upon it—something in the nature of a right appurtenant to the upland, conveying * * * a qualified right under immemorial custom and usage to extend their occupation over the shore by erection thereon and thereacross of wharves, piers, and the like as means of commerce and aids to navigation."

"If they had a mere parol license in the premises from the shore owner, and were without other warrant than his mere permission to occupy the shore with their structures, they had neither legal nor equitable claim thereto, even

though and after they had actually taken possession of the shore lot and erected their marine structures upon it under such parol permission. Such license is always revocable at the pleasure of the licensor, and it neither imports title of any sort in them, nor, even when acted upon, involves any matter of estoppel in pais against him. Hicks et al. v. Swift Creek Hill Co., 133 Ala. 411 [31 South. 947, 57 L. R. A. 720]."

The case of Hicks v. Swift Creek Mill Co. it seems to me draws a distinction between cases where no consideration was paid to the licensor and cases in which a valuable consideration was paid for the license, and cites Rhodes v. Otis, 33 Ala. 578, 73 Am. Dec. 439. In that case it is held that a parol license, obtained for a valuable consideration, cannot be revoked by the grantor, when the grantee, having acted under it, would be injured by the revocation. The doctrine of estoppel in pais applies to such case. Rhodes v. Otis, supra, and authorities therein cited.

I think it is well settled that an executed license on a consideration is irrevocable, and the licensor will be estopped from revoking the license. 18 Am. & Eng. Encyc. of Law (2d. Ed.) pp. 1144, 1145; Motes v. Bates, 80 Ala. 386. And I think that, according to the weight of authority outside of Alabama, an executed license, where the licensee has gone to expense, is irrevocable, and the licensor will be estopped from revoking the license. 18 Am. & Eng. Encyc., supra, and authorities cited in notes.

In the case of National Waterworks Company v. Kansas City (C. C.) 65 Fed. 694, Mr. Justice Brewer of the Supreme Court, United States, sitting as Circuit Justice, used the following language:

"The rule is recognized in this state, as elsewhere, that where one party enters upon the real estate of another under a parol license from the latter, and at large expense constructs an improvement which is necessary for the successful carrying on of the business of the licensee, the licensor is estopped to deny the right of the licensee to continue such occupancy and use so long as the necessities of his business require."

In this opinion Mr. Justice Brewer cites quite a number of decisons in support of the above rule. In that case the facts established a parol license so far executed as to vest in the water company a right of occupancy and use.

My opinion is:

(1) That the complainant had and has rights in the shore referable to its ownership of the upland, and to the uses it is making of the shore in connection with the upland, and these rights include that of erecting piers, wharves, booms, and other like structures in front of its upland accorded to it by the custom and usage shown in this case.

(2) That, irrespective of the custom and usage referred to, the complainant had the right to erect the wharves, booms, and the lumber bed constructed by it in front of its uplands, under permission or license from the Mobile river commission, which action of the commission is, under the facts and circumstances shown, binding on the city of Mobile, and that the city of Mobile is estopped to deny the right of the complainant to continue the occupancy and use of the same so long as the necessities of its business require.

(3) That if I regard the license or permission given to complainant by the river commission as not binding on the city of Mobile,

it has, by its acts and conduct in the premises, equitably estopped itself from asserting any claim to the property in question which would annul complainant's rights therein or impair its free use and enjoyment of the same. Mr. Justice Clifford, speaking for the Supreme Court of the United States, states the rule thus: "Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adverse claim." Swain v. Seamens, 9 Wall. 254, 19 L. Ed. 554; vol. 7, Rose's Notes, p. 174; Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79; 18 A. & E. Enc. of Law (2d Ed.) p. 1145, and notes; also pages 1146–1147; Sullivan Timber Co. v. City of Mobile (C. C.) 110 Fed. 197, and authorities therein cited.

(4) That the case presented is one of equitable cognizance, and that the rights of the complainant may be protected by injunction. 18 Am. & Eng. Encyc. of Law (2d Ed.) p. 1146; Sullivan Timber Co. v. City of Mobile, supra; Leverich v. City of Mobile (C. C.) 110 Fed. 170.

A decree in accordance with the views herein expressed will be entered.