## JONES STORE CO. v. DEAN et al.*
### No. 9114.

Circuit Court of Appeals, Eighth Circuit.
Feb. 1, 1932.

MARTINEAU, District Judge, dissenting in part.

Arthur Miller and Charles W. German, both of Kansas City, Mo. (Maurice H. Winger, Leland Hazard, German, Hull & German, and Winger, Reeder, Barker, Gumbiner & Hazard, all of Kansas City, Mo., on the brief), for appellant.

Samuel W. Sawyer, of Kansas City, Mo. (Richard S. Righter, of Kansas City, Mo., on the brief), for appellees.

Before STONE and GARDNER, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge.

The Jones Store Company, a Delaware corporation, being a resident and citizen of that state, and doing business in Kansas City, Mo., brought this suit in equity in the District Court of the United States for the Western Division of the Western District of Missouri, against the defendants, being residents and citizens, some of the state of Kansas and some of the state of Illinois, to reform an instrument to modify a written lease on property in Kansas City, Mo., and to impress upon the defendants an estoppel against claiming such modification. The instrument sought to be reformed, and against which estoppel was claimed, increased defendants' rentals for the period of the lease approximately $155,000. Jurisdiction was based on diversity of citizenship, and venue

*Rehearing denied March 8, 1932.

in the district in which the suit was brought upon the alleged existence of a cloud or incumbrance on the title to a leasehold estate in property in that district, which cloud or incumbrance it was sought by the suit to remove.

The defendants filed a motion to dismiss on the ground that, while diversity of citizenship existed, neither the plaintiff nor any of the defendants were residents of the Western district of Missouri, and that the suit could not be properly construed into one to remove a cloud or encumbrance on property in that district.

The court held that the suit was one to remove a cloud or incumbrance upon property in the district where the suit was brought, and since the requisite diversity of citizenship existed could be maintained as a local suit in that district, notwithstanding none of the parties lived there. The defendants then answered denying the merits of plaintiff's bill, both as to modification and as to estoppel, and also asked judgment by way of counterclaim for the increased rent alleged to have accrued under the lease up to the time of filing the suit. After a hearing on the merits, plaintiff's bill was dismissed and defendants were given judgment on their counterclaim. Plaintiff now on appeal asks for a reversal of the decree, and that the case be dismissed by this court because the venue did not properly lie in the Western district of Missouri where it brought its suit. It seeks now to take advantage of defendants' objection to the venue. Defendants have not appealed, either from the decree or from the order denying their motion to dismiss on the ground that the venue was not properly laid. They ask that the decree as rendered be sustained. For convenience the parties will be referred to here as they appeared in the court below.

For many years prior to July 31, 1919, the Jones Store Company operated a large department store, located on the southeast corner of Twelfth and Main streets, occupying four buildings in a row, extending south from Twelfth street on the east side of Main street in Kansas City, Mo. The lands upon which these buildings are situated may be designated as parcels 1, 2, 3, and 4. The Jones Store Company held them under lease which expired January 1, 1925. Frances M. Dean owned parcels 1 and 4. O. H. Dean, the divorced husband of Frances M. Dean, controlled 2 and 3.

In the early part of 1919 plaintiff sought to renew its lease upon the four parcels of land upon which its store was located. It did not at that time renew its lease upon the parcels controlled by O. H. Dean, but on July 31, 1919, it entered into a lease with Frances M. Dean covering her two buildings, the lease to become effective January 1, 1925, and to expire December 31, 1955. The rental upon parcel 4 involved in this litigation, and designated as 1215–1217 Main street, was to be $9,000 per year, payable in equal monthly instalments of $750 each, with a covenant on the part of the Jones Store Company to erect thereon at its own expense, within five years from the first of January, 1925, a new building, costing not less than $50,000.

O. H. Dean, who at that time was refusing to negotiate a new lease upon his properties, criticized the one that his former wife was making and said that she did not have sense enough to properly protect her interest. To protect her from this criticism, at the time the lease was executed, plaintiff and Frances M. Dean entered into a separate contract as follows (omitting formal parts): "Now, in consideration of the execution of the said lease, said, the Jones Store Company, agrees that if at any time during the term of said lease it shall rent either the premises known as 1209 and 1211 Main Street, or the premises known as 1213 and 1215 Main street, in Kansas City, Missouri, or both of them, (properties controlled by O. H. Dean), paying an excess of nine thousand dollars per year for either, then the rent of the building 1215 and 1217 Main Street, in Kansas City, Missouri, covered by said first described leasehold, shall be correspondingly increased, so that said Frances M. Dean, her heirs and assigns, shall at all times receive an equal sum for the rent of the premises 1215 and 1217 Main Street, Kansas City, Missouri, as paid for either of the other two buildings above described."

In the latter part of 1924, plaintiff again entered into negotiations for a lease of the O. H. Dean properties. The terms upon which these properties could be leased were found to be different from the terms of the Frances M. Dean lease on parcel four. A higher rental would have to be paid for the O. H. Dean properties, but plaintiff would not be required to construct a new building. Recognizing that there might be a difference as to the construction of the separate written contract entered into at the time the Frances M. Dean lease was executed, plaintiff conferred with Frances M. Dean's attorney and authorized agent before executing the lease with O. H. Dean. She then agreed

that, in the event the plaintiff made a lease for the O. H. Dean properties, she would do one of two things: First, retain her then existing lease with the lower rental, but with the obligation of the plaintiff to erect upon her property a new building; or, second, abandon her then existing lease and take a lease to conform in all respects to the O. H. Dean lease. This election was to be made after plaintiff had executed its lease with O. H. Dean and had submitted a copy of it to her.

Relying upon this promise, plaintiff shortly thereafter, in the early part of January, 1925, executed a lease with O. H. Dean, in which it agreed to pay for each of his parcels a rental in excess of that which was to be paid to Frances M. Dean, but was not required to construct a new building, unless an option in the contract was exercised. A copy of the lease was sent to Frances M. Dean the latter part of January, 1925. No notice of an election as to which of the two leases she would take was given to the Jones Store Company. She later accepted rent under the lease of July 31, 1919, at the rate of $750 per month for the month of February. Later, on February 25, 1925, Frances M. Dean gave the property in question to her son, Mason L. Dean, one-half individually and one-half in trust for her daughter and the daughter's two minor children, in consideration of love and affection, and by way of gift, reserving to herself an annuity of $9,000 from each of the deeds. Concurrently Frances M. Dean assigned to Mason L. Dean, individually and as trustee, her rights in the separate agreement of July 31, 1919, with full power to agree with the lessee upon any modification of the lease, provided the amount of rental then payable was not reduced. Mason L. Dean did not notify the Jones Store Company of an election under the assignment to him, but accepted the rent for the month of March, 1925. The four grantees named in Frances M. Dean's conveyances are the defendants in this suit. She herself is not a party to it.

Defendants now insist that they are entitled to the increased rental provided in the O. H. Dean lease, also to a new building, which has now been constructed, costing in excess of $150,000. Plaintiff insists that defendants are entitled only to the rental provided for in the lease of July 31, 1919, and to the newly constructed building.

■ The contention of plaintiff that the District Court was without jurisdiction is first considered. The court had jurisdiction.

Plaintiff invoked the jurisdiction of the federal court on the ground of diversity of citizenship and laid the venue in the Western district of Missouri upon the ground that the suit involved questions as to the existence of a lien or a cloud upon a leasehold in that district. Defendants objected to the venue. The trial court sustained the contention of plaintiff as to the venue and retained jurisdiction of the case. Since diversity of citizenship unquestionably gave a federal court jurisdiction, the plea of venue was one of privilege to the defendants alone. Defendants could have waived that privilege in the trial court and may do so in this court by failing to appeal from the trial court's order refusing them that privilege, or expressly, which they have done. The question of whether the suit was a local one is not now material. The right of the defendant to be sued in his own district or that of the plaintiff is one of venue only and can be waived, and when waived, as has been done here, the objection cannot be taken advantage of by the plaintiff. No party other than the one who has the right to the privilege can assert that objection on appeal. The defendants' failure to take a cross-appeal prevents either them or the plaintiff from taking advantage of it in this court. Camp v. Gress, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997; Peoria & Pekin Union Railroad Company v. United States, 263 U. S. 528, 536, 44 S. Ct. 194, 68 L. Ed. 427; Commercial Insurance Co. v. Consolidated Stone Co., 278 U. S. 177, 49 S. Ct. 98, 73 L. Ed. 252.

■ Conceding that the written contract or side agreement of July 31, 1919, made at the time of the execution of the lease, entitled Frances M. Dean to any increased rental that the Jones Store Company might later agree to pay O. H. Dean for his properties, her agreement made early in January, 1925, estopped her from relying upon the terms of the side agreement. With knowledge that plaintiff was negotiating a lease with O. H. Dean for a higher rental than that to be paid for her property she expressly agreed that, if plaintiff made such a lease, she would either keep her then existing lease, with a lower rental, but with the obligation on the plaintiff to erect upon her property a new building, or she would abandon her then existing lease and take a lease to conform in terms to the O. H. Dean lease. She made this agreement with the knowledge and understanding that plaintiff expected to act upon it. Plaintiff did act upon it and made a lease, the terms of which required it to

pay a higher rental for the O. H. Dean properties. A copy of the O. H. Dean lease was then given to Frances M. Dean. With knowledge of the terms of this lease she then accepted rents as provided in her existing lease, and made a conveyance of her property to the defendants without indicating that the terms of the lease with plaintiff had in any respect been changed. This constituted an election upon her part to retain her then existing lease, although the rent was lower than that to be paid by plaintiff to O. H. Dean. When she made her promise or agreement in January, 1925, with the plaintiff, she did not then know whether she would prefer her then existing lease or one in terms to conform to the one that plaintiff might make with O. H. Dean. She did, however, definitely agree to accept one or the other of the two leases. She by that agreement either promised to abandon an existing right, which is now asserted by defendants, her donees, or, more likely, construed the side agreement as one which entitled her only to what she was agreeing to do. If defendants' contention now is correct, she surrendered an existing right of the value of approximately $155,000. Relying upon that promise plaintiff made its new lease with O. H. Dean.

While an estoppel cannot be based upon mere promises to do something in the future, it may be based upon a promise to abandon an existing right, where that promise is acted upon by the person to whom the promise is made to his disadvantage. In this case a promise to abandon an existing right of great value was made by Frances M. Dean, and was acted upon by the plaintiff to its great disadvantage. It would manifestly be inequitable to permit the defendants, her donees, to avoid the consequences of her promise. So far as this record shows, she, herself, is not attempting to avoid it. This equitable principle is clearly announced in Insurance Company v. Mowry, 96 U. S. 544, 547, 24 L. Ed. 674, where it is said: "The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. * * * The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly

induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment."

This statement of law is peculiarly applicable to this case. That it may be invoked here it is not necessary to show that Frances M. Dean intended to commit a fraud upon the plaintiff. To permit defendants to repudiate her promise would constitute such a fraud as the doctrine of estoppel is intended to prevent. In Faxton v. Faxon, 28 Mich. 159, the court announced the law to be: "There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

The defendants, however, strenuously insist that since the agreement of Frances M. Dean, which is the ground of estoppel, was an oral one, it falls within the statute of frauds and is therefore unenforceable. This contention has been made many times, both in the national and Missouri courts, and has been distinctly disapproved by both. It is well established that an estate in land may be transferred from one man to another without a writing by matter in pais, and that the statute of frauds is not available as a defense. In Dickerson v. Colgrove, 100 U. S. 578, 580, 25 L. Ed. 618, the Supreme Court distinctly approved this principle in the following language: "The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice." This same doctrine was later approved in Kirk v. Hamilton, 102 U. S. 68, 76, 26 L. Ed. 79, and received the approval of the Supreme Court of Missouri in Hubbard v. Slavens, 218 Mo. 598, 117 S. W. 1104, 1110. This court in Smiley v. Barker, 83 F. 684, 686, in an opinion by Judge Sanborn, held that

provisions of a contract within the statute of frauds might be waived by an oral agreement. He there said: "The statute of frauds may not be used to perpetrate a fraud. One cannot take advantage of his own wrong. One may not so speak and act as to knowingly induce another to change his position, and then avail himself of that change to his prejudice. * * * Bishop, in his work on Contracts, says, at section 792: 'Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it. Thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.'" These authorities settle adversely to the defendants' contention that the statute of frauds here may defeat plaintiff's rights under the oral agreement of Frances M. Dean.

■ Estoppel may be asserted as a ground of affirmative relief. Wehrman v. Conklin, 155 U. S. 314, 15 S. Ct. 129, 39 L. Ed. 167; Sullivan Timber Co. v. City of Mobile (C. C.) 110 F. 186; Id. (C. C.) 124 F. 644. However, the defendants are here seeking to recover the increased rent by way of cross-complaint. As against that claim, estoppel is asserted defensively.

■ A majority of the court is of the opinion that the facts do not entitle the plaintiff to a reformation of the written contract of July 31, 1919, but the writer believes there should be a reformation. The purpose of this side agreement was not to enable Frances M. Dean to make a better rental contract than O. H. Dean might later make, as defendants would now construe it, but it was to enable her to be sure that the one she was making was as good as the one that might later be made with him, and to enable her to substitute his for hers, if she regarded his as better.

■ The defendants are mere donees of Frances M. Dean and stand here in her shoes. But, if they are not donees, since the estoppel became effective as against her before the property was conveyed to them and plaintiff was in possession at the time of their conveyance, plaintiff's possession was notice to them of the terms under which it held the property. Defendants are, therefore, bound by her estoppel.

The decree of the lower court is reversed, with directions to proceed in conformity with this opinion.